UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY MAE JOHNSON,                      Case No. 08-14363

           Plaintiff,                George Carman Steeh
v.                                      United States District Judge

COMMISSIONER OF                         Michael Hluchaniuk
SOCIAL SECURITY,                        United States Magistrate Judge

           Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On October 14, 2008, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George Caram Steeh referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits. (Dkt. 2). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 11, 14).

B.    Administrative Proceedings

Plaintiff filed the instant claims on June 23, 2005, alleging that she became

unable to work on September 1, 2003.  (Tr. at 50-52).  The claim was initially

disapproved by the Commissioner on December 6, 2005.  (Tr. at 33-36).  Plaintiff

requested a hearing and on August 29, 2007, plaintiff appeared with counsel before

Administrative Law Judge (ALJ) Joan G. Knight, who considered the case *de*

*novo*.  In a decision dated January 25, 2006, the ALJ found that plaintiff was not

disabled.  (Tr. at 13-21).  Plaintiff requested a review of this decision on February

7, 2008.  (Tr. at 8-9).  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council, on August 26, 2008, denied plaintiff's

request for review.  (Tr. at 2-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-

44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence

supports the Commissioner's determination that plaintiff is not disabled.

Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary

judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**,

and that the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

A.    ALJ Findings

Plaintiff was 51years of age at the time of the most recent administrative

hearing.  (Tr. at 14).  Plaintiff's relevant work history included approximately 10 years as a dietary aid.  (Tr. at 110).  In denying plaintiff's claims, defendant Commissioner considered diabetes, high blood pressure, problems with eyesight, carpal tunnel syndrome in the right hand, and pain in both feet as possible bases of disability.  (Tr. at 14).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since September 1, 2003.  (Tr. at 14).  At step two, the ALJ found that plaintiff's diabetes, hypertension, mild bilateral carpal tunnel syndrome, and depressive disorder were "severe" within the meaning of the second sequential step.  (Tr. at 15).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.* At step four, the ALJ found that plaintiff could not perform her previous work as a dietary aide, but could perform a limited range of light work.  (Tr. at 16).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 19).

    B.    <u>Parties' Arguments</u>

        1.    Plaintiff's claims of error

According to plaintiff, contrary to Social Security Ruling 96-8p, the ALJ never discussed or evaluated the mental residual functional capacity (RFC)

assessment form where the state agency physician opined that plaintiff suffered from a "moderate limitation" in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. at 171). At the hearing, the vocational expert (VE) was asked to assume "an individual [who] 20 percent of the time or approximately one day a week were unable to complete a normal workday and workweek without interruptions from psychologically based symptoms or unable to perform at a consistent pace without an unreasonable number and length of rest periods." The VE confirmed that such an individual would be precluded from work. (Tr. at 331). Plaintiff argues that, under *Bankston v. Comm'r of Soc. Security*, 127 F.Supp.2d 820 (E.D. Mich. 2000), "moderate" in the state agency physician's assessment is equivalent to "often" under the Commissioner's prior regulations in effect at the time *Bankston* was decided which equates to 20 percent of a 40 hour work week. Thus, plaintiff argues, she is precluded from work, based on the VE's testimony.

    2.    Commissioner's counter-motion for summary judgment

    According to the Commissioner, despite citing to case law regarding evaluating opinions of treating physicians, plaintiff argues only that the ALJ failed to discuss the Mental Residual Functional Capacity (MRFC) assessment form completed by the state agency psychiatrist. The Commissioner also asserts that

plaintiff offers no precedential authority supporting her assumption that the "moderate" limitation (in the ability to complete a normal workday and workweek without psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods) indicated in section I of the MRFC assessment form, equates with missing work 20 percent of the time or 1 day per week.

Rather, according to the Commissioner, section I of the MRFC assessment form is entitled "Summary Conclusions," and it is defined as "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of the documentation and does not constitute the RFC assessment." Social Security Administration's Program Operations Manual System (POMS) DI 24510.060.7.  In contrast, asserts the Commissioner, section III of the MRFC assessment form is entitled "Functional Capacity Assessment" and "is for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."  POMS DI 24510.060.  Section III confines its discussion to the effects of the impairments on functioning, and should not include "severity ratings or nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations.  Such terms do not describe function and do not

usefully convey the extent of capacity limitation." POMS DI 24510.065. Thus, according to the Commissioner, the state agency psychiatrist's indication that plaintiff had a "moderate" limitation in section I of the MRFC assessment form was merely a preliminary finding used to make the RFC determination in section III.

In contrast, according to the Commissioner, in section III of the MRFC assessment form, the state agency psychiatrist specified that plaintiff was capable of interacting with coworkers, had some difficulty interacting appropriately with the general public, and some difficulty adapting to routine changes. (Tr. at 172). According to the Commissioner, she translated the Section I "Summary Conclusions" into concrete limitations, concluding that plaintiff appeared to be able to understand and remember simple instructions; maintain the level of attention and concentration required to perform simple, routine, repetitive tasks in a low production setting and with limited interpersonal demands. (Tr. 172). Notably, "[s]tate agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(I). Thus, the state agency psychiatrist presumably completed the form in accordance with Agency policy, and set forth plaintiff's mental RFC in section III of the MRFC assessment form.

The Commissioner disputes plaintiff's characterization that the ALJ failed to consider the opinion of the state agency psychiatrist, and argues that the ALJ expressly considered the medical opinions of all of the state agency physicians when making her RFC finding.  (Tr. 19).  The Commissioner also argues that the ALJ's mental RFC finding was consistent with the opinion of the state agency psychiatrist.  The ALJ indicated that she had afforded the opinions of the state agency medical consultants, including that of the state agency psychiatrist, persuasive weight finding that the opinions of the medical consultants were consistent with her findings.  (Tr. 19).  The Commissioner also points out that the ALJ's mental RFC finding was supported by the opinion of Dr. Dickson, a consultative psychologist, who evaluated plaintiff and opined that plaintiff's psychological condition would only mildly impair her ability to perform work related activities and assessed her with a GAF of 65, which is indicative of some mild symptoms or some difficulty in social, occupational, or school functioning. (Tr. at 34).

After determining plaintiff's RFC, the ALJ relied on the VE's responses to a hypothetical question, which included plaintiff's RFC of a range of light work in addition to performing simple, routine, repetitive tasks in a work setting with low production requirements and limited interpersonal demands, to find that she could perform a significant number of jobs in the economy.  (Tr. 19).  According to the

Commissioner, assuming that the ALJ's RFC finding was supported by substantial evidence, plaintiff does not allege any additional errors with the ALJ's reliance on the VE's testimony to find she was not disabled at step five of the sequential analysis. (Dkt. 14).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her

> past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). The findings of a psychologist are relevant in establishing the existence and severity of a mental impairment, and a psychologist's evaluation of the disabling nature of a mental impairment need not be given less weight than that of a psychiatrist. *Crum v. Sullivan*, 921 F.2d 642 (6th Cir. 1990).

 C. <u>Analysis and Conclusions</u>

 The residual functional capacity circumscribes "the claimant's residual

abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Not all impairments deemed "severe" in step two must be included in the hypothetical. *Griffeth*, 217 Fed.Appx. at 429. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight

to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ ultimately determined that plaintiff possessed the residual functional capacity to perform a limited range of light work. "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The only issue raised by plaintiff on appeal is whether the ALJ properly incorporated her mental impairment into the hypothetical question posed to the VE,

and thus, whether substantial evidence supports the ALJ's decision. As to an

allegedly disabling mental impairment, the Commissioner has promulgated a

special technique to ensure that all evidence needed for the evaluation of such a

claim is obtained and evaluated. This technique was designed to work in

conjunction with the sequential evaluation process set out for the evaluation of

physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the

foundation for making disability determinations when mental impairments are

involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or
> (I) of this section that an individual is not under a
> disability, in any case where there is evidence which
> indicates the existence of a mental impairment, shall be
> made only if the Commissioner has made every
> reasonable effort to ensure that a qualified psychiatrist or
> psychologist has completed the medical portion of the
> case review and any applicable residual functional
> capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure." 20

C.F.R. § 404. 1520a(d). The regulation further requires the standard document to

be completed and signed by a medical consultant at the initial and reconsideration

levels, but provides other options at the administrative law judge hearing level. *Id.*

Under this procedure, the Commissioner must first make clinical findings, as to

whether the claimant has a medically determinable mental disorder specified in one

of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id.* The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id.* The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id.*

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a

five-point scale:  None, mild, moderate, marked, and extreme.  *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008).  The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more.  *Id.*  "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4).  Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe.  *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(d)(1).  If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability.  *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 1520a(c)(2).  The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met.  *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*.  If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional

capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

Matthew P. Dickson, Ph.D., evaluated the claimant on November 7, 2005, at the request of the Michigan State agency, and diagnosed depressive disorder, not otherwise specified. Plaintiff was oriented, her speech was unimpaired, and there was no significant evidence of hallucinations, delusions, persecutions, or obsessions. Dr. Dickson noted that plaintiff seemed to be malingering during memory testing. Based on his evaluation, Dr. Dickson opined that plaintiff's psychological condition would mildly impair her ability to perform work-related activities. He indicated that plaintiff's global assessment of functioning was 65, suggestive of some mild symptoms, or some difficulty in social or occupational functioning, but that she was generally functioning reasonably well. In addition to the physical medical source statement, Dr. Dolven completed a medical source statement on plaintiff's ability to perform mental work-related activities. Dr. Dolven opined she was moderately limited in her ability to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity. Since Dr. Dolven was a family doctor and his records did not disclose that a mental status examination had been performed, the ALJ found the opinions in his statement to be unpersuasive. Dr. Dolven's opinions were also found to be

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; 08-14363

inconsistent with the fact that plaintiff was fully capable of taking care of a household with a disabled brother and a minor child.  Further, Dr. Dickson indicated that plaintiff seemed to exaggerate her symptoms and under-represent her overall functioning.  Given that plaintiff had not received any continuing mental health treatment from a psychiatrist or psychologist, the ALJ concluded that any limitations resulting from a mental disorder were less serious than alleged.  Based on the overall record, the ALJ concluded that plaintiff had mild limitations in restriction of activities of daily living.  Plaintiff reported to Dr. Dickson that she was independent in self-care and personal hygiene, and was able to prepare her own meals, perform household chores, do the laundry, pay bills, grocery shop, and drive a car.

The ALJ concluded that plaintiff had moderate difficulties in maintaining social functioning.  Plaintiff indicated that she had satisfactory interactions with former co-workers when employed, and reported spending time with family, but denied social interactions with friends.  Dr. Dickson noted that plaintiff was socially inappropriate during the mental status evaluation.  In the area of concentration, persistence or pace, the ALJ found that plaintiff had moderate difficulties.  This determination was based on plaintiff's limited education, and the overall evaluation of Dr. Dickson.  The ALJ found no episodes of decompensation and no evidence to establish the presence of the "C" criteria of the Listings.

The ALJ noted that the limitations identified in the "B" and "C" criteria were not a residual functional capacity assessment, but are only used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. The mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment of plaintiff's functional limitations. Accordingly, the ALJ translated the "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment. In determining her residual functional capacity, the ALJ found that plaintiff's claims were not wholly credible with regard to the severity and extent of her limitations and that she had not been forthcoming about her home activities. She reported to Dr. Dickson that she lived alone, had no income, and got money from her brother to pay her bills. However, tax records for 2005 indicate that she was paid to provide health care for her brother in her home. Plaintiff further claimed a niece living with her as a dependent during that entire year. In 2006, plaintiff claimed her brother and a grandson as dependents on her tax return. The ALJ concluded that, since she claimed the children as dependents, plaintiff must have been providing care for them as the responsible adult, as well as providing care for her brother until May 2007, when he passed away.

Based on the foregoing, the ALJ concluded that plaintiff had environmental restrictions involving hazards, such as moving machinery and unprotected heights.

In addition, the ALJ found plaintiff capable of performing simple, routine, repetitive tasks in a work setting with low production requirements and limited interpersonal demands. The VE was asked to consider a hypothetical individual with plaintiff's vocational profile and the residual functional capacity as determined by the ALJ. The VE testified that such an individual could perform the unskilled light jobs of inspector with 18,000 jobs regionally and 396,100 jobs nationally; assembler with 8,000 jobs in the lower peninsula of Michigan and 300,000 jobs in the United States; and, dining room attendant with 5,900 jobs in the region and 177,000 jobs in the nation. The VE further testified that if the individual needed to alternate sitting and standing every 30 minutes, the position of dining room attendant would be eliminated. The VE also indicated that the number of assembler jobs would be reduced to 4,000 regionally and 85,000 nationally; and the number of inspector jobs would be reduced to 4,000 in the region and 150,000 in the nation.

Plaintiff argues that *Bankston v. Comm'r of Soc. Security*, 127 F.Supp.2d 820 (E.D. Mich. 2000), found that "moderate" in the state agency physician's assessment is equivalent to "often" under the Commissioner's prior regulations in effect at the time *Bankston* was decided. The viability of the *Bankston* decision, has been repeatedly questioned as contrary to the Commissioner's Psychiatric Review Technique form instructions and the principle of deference to an

administrative agency's construction of its own regulations.  *Benton v. Comm'r of Social Security*, 511 F.Supp.2d 842, 847 (E.D. Mich. 2007); *Ogden v. Apfel*, Case No. c-3-00448 (S.D. Ohio 2001) (suggesting that *Bankston* is simply wrong because it ignores the Commissioner's interpretation of "often" in the regulations). *Bankston* correctly notes that a "hypothetical question must consider the severity – including the degree and/or frequency – of the claimant's concentration problems." *Benton*, 511 F.Supp.2d at 847.  However, the *Benton* court rejected the plaintiff's assertion that the ALJ must apply a "formulaic 50% reduction in concentration to Plaintiff based solely on his finding of a moderate limitation in concentration, persistence, and pace." *Id*.  Since *Bankston*, C.F.R. 404.1520a(c)(4) has been amended to encompass a five-level scale based on severity rather than frequency of the limitation, as set forth in the scale evaluated in *Bankston*.  *Brewer v. Comm'r of Social Security*, 2008 WL 719228, *5 (E.D. Mich. 2008).  This Court has previously concluded that to the extent *Bankston* was good law under the old version of § 404.1520a, it is simply inapplicable to the current regulation.  *Id.*

While plaintiff asserts, under SSR 96-8p, that the ALJ failed to adequately consider and resolve any inconsistencies between its RFC find and any "medical source" opinions, which, according to plaintiff, includes the opinion of the state agency physician found in the mental RFC assessment form.  Contrary to the Commissioner's view "medical source statements are not limited to those by

treating physicians: "medical source statements" are "opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source *or other acceptable medical sources*."  SSR 96-8p (emphasis added).  In the view of the undersigned, the ALJ properly considered the mental RFC and incorporated plaintiff's mental impairments into the RFC.

As articulated by the Commissioner and the ALJ, plaintiff confuses the assessment of plaintiff's mental impairments at step two and three with the assessment done at steps four and five.  The ALJ noted that the limitations identified in the "B" and "C" criteria were not a residual functional capacity assessment, but are only used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  The mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment of plaintiff's functional limitations.  Accordingly, the ALJ properly translated the "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment.  It was the work-related functions that were used by the ALJ to formulate the RFC.  *See also* Commissioner's discussion of section I versus Section III of the MRFC form.

In light of the medical and other evidence discussed above, I suggest that the VE's opinion is consistent with the findings of treating physicians and mental health professionals, and can properly be considered substantial evidence

supporting the ALJ's findings.  *See Sias v. Sec'y of Health & Human Servs.*, 861

F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823

F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820

F.2d 777, 779 (6th Cir. 1987).  Thus, the undersigned concludes that there is an

insufficient basis on this record to overturn the ALJ's credibility determination and

that the hypothetical relied on properly reflected plaintiff's limitations.

After review of the record, the undersigned concludes that the decision of

the ALJ, which ultimately became the final decision of the Commissioner, is

within that "zone of choice within which decisionmakers may go either way

without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is

supported by substantial evidence.

## IV.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for

summary judgment be **DENIED**, defendant's motion for summary judgment be

**GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474

U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th

Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 15, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

Report and Recommendation
Cross-Motions for Summary Judgment
*Johnson v. Comm'r*; 08-14363

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 15, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Susan K. DeClercq, Mikel E. Lupisella, and the Commissioner of Social Security</u>.

s/Darlene Chubb\
Judicial Assistant\
(810) 341-7850\
darlene_chubb@mied.uscourts.gov

Report and Recommendation\
Cross-Motions for Summary Judgment\
*Johnson v. Comm'r*; 08-14363